Mildred W. Smith (Petition filed sub nom. Mildred S. Wiss) v. Commissioner.
Smith v. Commissioner
Docket No. 72070.
United States Tax Court
T.C. Memo 1961-155; 1961 Tax Ct. Memo LEXIS 197; 20 T.C.M. (CCH) 775; T.C.M. (RIA) 61155; May 29, 1961
William R. Spofford, Esq., Land Title Bldg., Philadelphia, Pa., and Charles I. Thompson, Esq., for the petitioner. John J. Hopkins, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income tax for the taxable years 1955 and 1956 in the respective amounts of $27,021.78 and $22,424.41. The only issue involves the proper tax treatment under the 1954 Code of certain payments made by J. Wiss & Sons Co. to the petitioner, the widow of the corporation's deceased officer and director. An unrelated issue raised in the petition has been conceded by the respondent. Findings of Fact The stipulated facts are incorporated herein by this reference. Petitioner Mildred *198 W. Smith resides at 38 Kenilworth Drive, Short Hills, New Jersey. She filed individual income tax returns for the taxable years 1955 and 1956 with the district director of internal revenue at Newark, New Jersey. Petitioner was formerly married to Norman F. Wiss who died on September 15, 1954. On December 12, 1959, she married Carleton Ford Smith. Prior to her remarriage and at all times relevant to these proceedings, petitioner's name was Mildred S. Wiss. J. Wiss & Sons Co., hereinafter referred to as Wiss & Sons, is a New Jersey corporation which was incorporated on May 13, 1900, and manufactures scissors, shears, and kindred products. Prior to his death in 1954, Norman F. Wiss had been a director and employee of Wiss & Sons for 35 years and had served as the corporation's vice president and treasurer for 23 years. His salary and bonus from the corporation totaled $80,000 in each of the three years preceding his death and, as such, he was the highest paid officer of Wiss & Sons during these years. On September 23, 1954, the regular monthly meeting of the Board of Directors of Wiss & Sons was held. The members of the Board who attended this meeting and their relationship to the *199 decedent Norman F. Wiss, were as follows: Richard R. Wiss
Nephew
Margarethe W. Sinon
Cousin
Jerome B. Wiss
Cousin
J. Robert Wiss
Brother
At this meeting the Board unanimously adopted the following memorial resolution: RESOLVED, that the following memorial be inscribed in the minutes of the directors of the company, and that a copy thereof be sent to Mildred S. Wiss, the surviving widow of Mr. Norman F. Wiss: The passing of a relative and associate and friend is always difficult to accept; and it is particularly so in the case of Norman F. Wiss with whom we were in close association for many years. Norman had been a director of the company for 35 years, and for 23 years he was vice president and treasurer, all of which offices he filled with distinction and with great benefit to the company. The sound financial condition of the company and its excellent reputation throughout the world are attributable in a large measure to the tireless energies, sound business judgment, high ideals and far-sightedness of Norman. We owe a great deal to him, and we take this opportunity of expressing our gratitude for his valuable and loyal services and our deepest regret *200 over his sudden and early death. At the same meeting, the Board unanimously adopted the following resolution providing for the payment to the petitioner of certain amounts specified therein: WHEREAS, Norman F. Wiss who was a director, vice president and treasurer of this company for many years died on September 15th, 1954 leaving his widow, Mildred S. Wiss, surviving; and WHEREAS, the directors of the company feel that it is proper and fitting that recognition be made of the valuable and loyal services which he rendered to the company. NOW, THEREFORE, be it Resolved that the company make the following payments to the said Mildred S. Wiss: At the rate of $4,583.33 per month (that being the salary of Norman F. Wiss at the time of his death, excluding bonuses) from September 15th, 1954 to December 31st, 1954. 7/24ths of the bonus which would have been paid to Mr. Wiss for the year 1954 (the 7/24ths being based on the period from September 15th, 1954 to December 31st, 1954; the remaining 17/24ths of the said bonus to be paid to the executors of the estate of the said Norman F. Wiss on account of compensation for services from January 1st, 1954 to the date of his death which *201 occurred on September 15th, 1954). $2,750.67 per month for the two (2) year period beginning January 1st, 1955 and ending December 31st, 1956. The said payments to be made on the first day of each month beginning January 1st, 1955. $5,000.00; payment as a death benefit under the Internal Revenue Code. In adopting the foregoing resolution the Board had in mind, among other things, the fact that the decedent's death resulted in a curtailment of income theretofore available to the widow. However, no specific needs of petitioner were discussed at the time and no analysis was made of petitioner's income from other sources or of her existing capital resources. The tax consequences of the payments to the corporation were discussed by the Board, but not the tax consequences to the petitioner. The bonus referred to in the resolution authorizing the payments became payable pursuant to a bonus plan instituted in 1950. At a special meeting of the Board of Directors of Wiss & Sons held on June 14, 1950, the following bonuses were voted to be paid immediately: J. Robert Wiss
$5,000
Norman F. Wiss
5,000
Jerome B. Wiss
5,000
Richard R. Wiss
2,500
In addition, the Treasurer *202 was instructed to set up on the books of the corporation the sum of $64,000 as additional compensation from which the following officers were to receive the following amounts: J. Robert Wiss, Jerome B. Wiss and Norman F. Wiss, $20,000 each, and Richard R. Wiss, $4,000; provided, however, that no payment was to be made until after receipt of the annual audit by the Company's accounting firm, and then only if it had been determined that: 1. The net dollar shipments for 1950 were greater than those in 1946; and 2. The gross profit was greater than 1946, before considering the above-mentioned payments. This bonus plan was continued and was in effect on the date of the death of Norman F. Wiss. The decedent had been paid $5,000 in June, 1954. Following the close of the year it was determined by the corporation's accounting firm that the conditions mentioned above had been satisfied with respect to the year 1954. Accordingly, the Estate of Norman F. Wiss was paid 17/24 of the $20,000 bonus which the decedent would have become entitled to had he lived until December 31, 1954. Pursuant to the Board's resolution, Wiss & Sons paid to the petitioner the following amounts during the years *203 1954 through 1956: 1954
1955
1956
Death Benefit
$ 5,000.00
7/24 of Bonus that would have been paid
decedent had he lived until 12/31/54
$ 5,833.33
Periodic payments
16,000.00
33,008.04
$33,008.04 Only the payments in 1955 and 1956 are here in issue. At the time of Norman F. Wiss's death, Wiss & Sons owed him no amounts, except accrued salary and bonus. The latter amounts were paid to his Estate and are not in issue in this proceeding. Prior to and at the time the payments in issue were made to the petitioner, she had not been an officer, director, or employee of Wiss & Sons, and she had not rendered any services to the corporation for which she might have been compensated. Petitioner has never been carried on the corporation's payroll. At the time of her husband's death, Wiss & Sons owed her nothing. On the date of the death of Norman F. Wiss, Wiss & Sons had 57 common stockholders and 49,675 shares of common stock outstanding. Of these 57 stockholders, 26 were trustees. Norman F. Wiss owned 1,705 shares or about 3.4 percent of the outstanding common stock, and petitioner owned 2,127 shares or about 4.3 percent. Most of the remaining outstanding *204 shares were owned individually or equitably by other descendants by blood or marriage of the original founders of the corporation and were related, some closely, some distantly, to Norman F. Wiss and petitioner. Other major shareholders who were closely related to the decedent were as follows: Relationship to
Name
Norman F. Wiss
Shares
Estate of F.C.J. Wiss
Estate of father
6,650
Margarethe W. Sinon
First cousin
5,087 1/2
Florence W. Taylor
Sister
3,806 1/4
Richard R. Wiss
Nephew
1,471
J. Robert Wiss
Brother
1,350 The shares held in the name of the Estate of F.C.J. Wiss were held in trust during the life of the decedent's mother. The beneficiaries of this trust were the decedent, J. Robert Wiss, and Florence W. Taylor. On January 22, 1953, Wiss & Sons issued a non-voting preferred stock dividend at the rate of one share of preferred for each share of common held. On the date of death of Norman F. Wiss, there were 49,675 shares of preferred stock outstanding, held by approximately the same persons and in approximately the same percentages as the common stock. Norman F. Wiss owned 1,955 shares of preferred, and the petitioner owned 2,127 shares. *205 The annual dividend paid by Wiss & Sons on its preferred stock is $1.00 per share. The dividend paid per share on the common stock for the year 1954 was $7. The net earnings after taxes of Wiss & Sons and the dividends declared on the common and preferred stock of the corporation in the years 1951 through 1956 were as follows: Common
Preferred
Total
Net Earnings
Dividends
Dividends
Dividends
Year
After Taxes
Declared
Declared
Declared
1951
$798,524.85
$514,742.61
$514,742.61
1952
487,128.18
349,825.15
349,825.15
1953
628,282.90
399,800.21
$49,975.00
449,775.21
1954
555,975.16
347,725.35
49,675.00
397,400.35
1955
608,385.73
347,780.31
49,675.00
397,455.31
1956
656,925.80
447,165.33
48,855.00
496,020.33
Prior to the payments by Wiss & Sons to the petitioner here in issue, the corporation had not made any payments to a widow or a survivor of a deceased officer. In 1948 and again in 1953 the Board of Directors discussed the question whether a pension plan should be installed for employees and whether, as a supplement to any such plan, provision should be made for the widows of deceased officers. At both times *206 the Board rejected these proposals for the reason that a company-wide pension plan appeared prohibitively expensive, and it was considered inappropriate - if other employees were not included - to make special provision for officers. However, on four occasions between 1951 and the death of the decedent, Wiss & Sons made payments to the widows of deceased employees, as follows: Name
Started
Amount
Total
Mrs. George Beaudin
10/1/52
12-monthly payments of $100 each plus $500 Christmas Gift
$1700.00
Mrs. Hanson O'Hare
10/1/52
22-monthly payments of $75 each
$1650.00
Mrs. John Varick
4/1/53
6-monthly payments of $100 each, plus $250 Christmas Gift
$ 850.00
Mrs. George Hehr
2/1/54
18-monthly payments of $75 each
$1350.00 The deceased employee in each case was a member of the sales force of the corporation, was in a non-executive position, had been with Wiss & Sons for many years, and was earning in excess of $10,000 annually. All held sales positions subordinate to that of Norman F. Wiss who was vice president in charge of sales when he died. In each of these instances, as in the case of the petitioner, the corporation did not make an *207 inquiry as to the needs of the particular widow involved. It assumed some help would be appreciated during the period of transition to a lower annual income. The corporation did not publicize the fact that it made the payments, but neither did it require the widow in each case to keep the matter a secret. Wiss & Sons charged each of these payments to a General Expense account on its books. On other occasions when employees of the corporation died and left widows, no payments were made. Each case was handled separately. J. Robert Wiss, the brother of Norman F. Wiss, died on March 8, 1955. Prior to his death he had been associated with Wiss & Sons for 43 years and its president for 24 years. In the year ending prior to his death he received as salary and bonus from Wiss & Sons a total of $75,000. He left no widow. The Board of Directors of Wiss & Sons authorized a $5,000 death benefit payment divided equally among his three surviving children. Jerome B. Wiss, a cousin of Norman F. Wiss, died on September 10, 1960. Prior to his death he had been associated with Wiss & Sons for approximately 35 years, had been its secretary for most of this period, and had been its executive vice *208 president since April of 1955. The Board of Directors of Wiss & Sons authorized the payment of $5,000 to his widow. At the time of his death, Wiss & Sons had in effect a pension plan for salaried and supervisory employees, together with a supplementary retirement plan for salaried and supervisory employees, which provided for death benefits and pension payments for surviving widows. These plans went into effect on March 28, 1956. The corporation initiated a similar plan for hourly employees effective January 1, 1956. A pension plan had been requested by the union representatives of the employees every year since 1949. Since the authorization of the payments here in issue and the subsequent institution by the corporation of pension plans for its salaried, supervisory, and hourly employees, the Board of Directors of Wiss & Sons on November 26, 1956, authorized the payment of a "death gratuity" to the widow of William F. Zimmer, who had been a salesman for the corporation. Periodic payments of $100 per month for 12 months were authorized and were charged to a pension expense account when paid. Following the death of Norman F. Wiss, Frederick D. Wiss, the decedent's son and the assistant *209 treasurer of the corporation, instructed the accounting personnel of Wiss & Sons to charge the payments to be made to the petitioner to a General Expense account. In accordance with these instructions, the payments made in 1954 were so charged. In March of 1955, however, the corporation's outside auditors - without the knowledge of Frederick D. Wiss and contrary to his directions - retroactively transferred $16,000 of the 1954 payments to the Executive Salaries account. Likewise without the knowledge of Frederick D. Wiss, the payments made to the petitioner in 1955 were first charged to Executive Salaries. Thereafter, by retroactive journal entry at the direction of the outside auditors, they were transferred to General Expense. The payments made to the petitioner in 1956 were charged to General Expense. The payments made to the petitioner in the years 1954, 1955, and 1956 were deducted by Wiss & Sons on its Federal income tax returns filed for those years. On its 1954 return $16,000 of the payments made to petitioner were included in the $80,000 reported as the salary of Norman F. Wiss and claimed as a salary expense in arriving at taxable income. On its 1955 and 1956 returns, the *210 payments to petitioner were reported and deducted as general expenses. No amount was withheld by Wiss & Sons from the payments made to the petitioner on account of any Federal income, social security, or unemployment insurance tax, or any State unemployment insurance tax. Petitioner did not include the payments received from Wiss & Sons during 1955 and 1956 in gross income on her individual income tax returns filed for said years, but she did report on the face of each return that "a non-taxable gift was received from J. Wiss & Sons Co." in each year. In the deficiency notice sent to the petitioner, the respondent determined that the payments she received from Wiss & Sons in 1955 and 1956 were taxable as income, "since you failed to establish that such amount was received as a gift rather than in consideration of services rendered by your deceased husband as an officer of said corporation". The payments made by Wiss & Sons to the petitioner in 1955 and 1956 were not intended as gifts. The dominant motive behind these payments was to give tangible recognition, by the way of additional compensation, to the highly valuable services rendered by the decedent over a long period of *211 time. Opinion RAUM, Judge: In , on appeal (C.A. 4, January 13, 1961), this Court applied the criteria set forth in , to determine whether certain amounts which a corporation paid to the widow of its deceased employee were excludible from gross income under Section 102(a) of the 1954 Code [1] as "gifts". In the instant case, on a new and different set of facts, this question is again raised. Although the evidence herein is stronger in favor of the widow and makes this a closer case than Pierpont, we think we must reach the same result. True, Wiss's board of directors did have in mind to some extent the widow's diminished income resulting from her husband's death. But it gave no consideration to her income from other sources (which was in fact substantial) or to her capital resources, and we find it difficult to believe on the record as a whole that the payments to petitioner were based upon her needs, that they *212 proceeded from a "detached and disinterested generosity," or that they were made "out of affection, respect, admiration, charity, or like impulses." Cf. . To the contrary, we conclude from the evidence as a whole that the dominant motive behind these payments was to give tangible recognition (by the way of additional compensation) to the highly valuable services rendered by the decedent over a long period of time. We have so found as a fact. Decision will be entered under Rule 50. Footnotes
1. SEC. 102. GIFTS AND INHERITANCES. (a) General Rule. - Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.↩